# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 10-84

LLOYD BORDELON AND DOTRIS BORDELON

VERSUS

HOWARD J. DESSELLE, JR., JOHN E. VERCHER,
ALLSTATE INSURANCE COMPANY AND
STATE FARM INSURANCE COMPANY

**********

**APPEAL FROM THE
TWELFTH JUDICIAL DISTRICT COURT
PARISH OF AVOYELLES, NO. 2004-6418-B/A
HONORABLE MARK A. JEANSONNE, DISTRICT JUDGE**

**********

**JAMES T. GENOVESE
JUDGE**

**********

Court composed of Oswald A. Decuir, Jimmie C. Peters, Marc T. Amy, James T. Genovese, and David E. Chatelain, Judges.[*]

Amy, J., concurs in part, dissents in part, and assigns written reasons.
Decuir, J., concurs in part and dissents in part for the reasons assigned by Judge Amy.

**ORIGINAL JUDGMENT REVERSED.
SECOND JUDGMENT VACATED.**

---

[*]Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**John W. Penny, Jr.**
**Penny & Hardy**
**600 Jefferson Street**
**Chase Towers, Suite 601**
**Post Office Box 2187**
**Lafayette, Louisiana 70502**
**(337) 231-1955**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
     **Allstate Insurance Company and**
     **Howard J. Desselle, Jr.**

**John T. Bennett**
**John T. Bennett Law Offices**
**Post Office Box 275**
**Marksville, Louisiana 71351**
**(318) 253-4631**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Lloyd Bordelon and Dotris Bordelon**

**Bonita K. Preuett-Armour**
**Armour Law Firm**
**Post Office Box 710**
**Alexandria, Louisiana 71309**
**(318) 442-6611**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **State Farm Mutual Automobile Insurance Company**

**Paul Mantle Lafleur**
**Post Office Box 1711**
**Alexandria, Louisiana 71309**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **State Farm Mutual Automobile Insurance Company**

**GENOVESE, Judge.**

The Plaintiffs, Lloyd Bordelon and his wife, Dotris Bordelon, filed suit, seeking damages stemming from a vehicle/pedestrian accident. The Plaintiffs waived their right to a trial by jury and stipulated that their cause of action did not exceed $50,000.00. After a bench trial, the trial court issued a judgment in favor of the Plaintiffs. The Defendants, Howard J. Desselle, Jr., and his liability insurer, Allstate Insurance Company (Allstate),[1] filed a Motion for a Suspensive Appeal, which was granted by the trial court. After the granting of the appeal, the trial court issued a subsequent (second) judgment which reduced the amount awarded in the original judgment to reflect the Defendants' fifty percent allocation of fault. On appeal, the Defendants assert that the trial court erred in assessing fault against Mr. Desselle. The Defendants also question the validity of the second judgment. For the following reasons, we reverse the original judgment dated August 28, 2009, and vacate the subsequent October 19, 2009 judgment of the trial court.

### FACTUAL AND PROCEDURAL BACKGROUND

The record indicates that on September 17, 2003, John E. Vercher and his wife, Edith Vercher, were traveling north on Louisiana Highway One in Avoyelles Parish to Lloyd Bordelon's house in order to pick up a clock that Mr. Bordelon had repaired for the couple. Howard J. Desselle, Jr. was also traveling north on Louisiana Highway One. Mr. Desselle testified that when he was attempting to pass the Vercher vehicle, he was unaware that the driver, Mr. Vercher, was going to make a left turn into Mr. Bordelon's driveway. As a result thereby, Mr. Desselle applied his brakes

---

[1]We note that the originally-named Defendants in this case were Howard J. Desselle, Jr., his liability insurer, Allstate, John E. Vercher, and his liability insurer, State Farm Mutual Automobile Insurance Company (State Farm). However, Mr. Vercher and State Farm were dismissed pursuant to settlement prior to the trial of the matter. Therefore, the Defendants referred to in this opinion are the remaining Defendants, Howard J. Desselle, Jr., and his liability insurer, Allstate.

to prevent a collision with the Vercher vehicle; however, he could not stop in time, and the vehicles collided.

Mr. Bordelon testified that he was in his shop cleaning a clock when he heard "squealing" and a "bang" and looked up to see that the vehicles had collided partially in his driveway. He testified that upon seeing this, he "took off running towards the vehicles" to "see if anybody was hurt."

The record indicates that after the initial impact, Mr. Bordelon and Mr. Desselle approached the Vercher vehicle. Mr. Desselle testified that after he determined that the Verchers were uninjured, he "walked out to the middle of the highway to direct the traffic" because the accident was partially blocking the southbound lane of Louisiana Highway One. Mr. Bordelon testified that he "heard somebody [that sounded] like Mr. Desselle say [to] move the vehicles." He related that when he heard that, he turned around and indicated to Mr. Desselle that the cars should not be moved. Mr. Desselle denied ever mentioning that either car should be moved.

Mrs. Vercher testified that as Mr. Bordelon approached the car, Mr. Vercher "applied his brakes and accelerator and went forward and hit Mr. Bordelon." Mrs. Vercher and Mrs. Bordelon both testified that the impact of the car thrust Mr. Bordelon into the corner post of his carport and an aluminum building adjacent to the carport. Mr. Bordelon was transported to the hospital from the scene of the accident by helicopter where he was treated for injuries to his brain, face, and stomach.

Trooper Troy McNeal of the Louisiana State Police arrived on the scene after the accidents occurred. He testified that, according to his accident investigation, Mr. Desselle did not establish himself in the passing lane before Mr. Vercher began his

2

left turn. On his report, Trooper McNeal noted that Mr. Desselle was "inattentive or distracted" at the time of the first accident. Further, he noted that Mr. Desselle committed the violation of "careless operation" of his vehicle. However, no citations were issued to either Mr. Desselle or Mr. Vercher.

The Bordelons filed suit against Mr. Vercher and his insurer, State Farm, and Mr. Desselle and his insurer, Allstate, alleging that he sustained injuries to his head, neck, back, and property as a result of the initial vehicular collision between Mr. Vercher and Mr. Desselle and the "resultant collisions" that followed. Pursuant to a settlement prior to trial, Mr. Vercher and his insurer, State Farm, were dismissed from this suit. The case was scheduled for trial by jury between the remaining parties; however, on the date of trial, the Plaintiffs waived the trial by jury, stipulating that they had reduced their demand to $50,000.00 plus interest and costs.

Following a bench trial, in its oral reasons for judgment, the trial court ruled that Mr. Desselle was one hundred percent at fault in causing the collision between himself and Mr. Vercher. Further, he found that Mr. Desselle and Mr. Vercher were each fifty percent at fault for the subsequent collision which caused Mr. Bordelon's injury. The trial court signed a judgment on August 28, 2009, which stated that Mr. Desselle and Allstate were responsible in the full sum of $50,000.00.[2] The judgment made no reference to the assignment of fault between Mr. Vercher and Mr. Desselle.

The Defendants filed a Motion to Vacate the Judgment, which was scheduled

---

[2] The August 28, 2009 judgment acknowledges that the Bordelons sustained "$535,363.04 in damages, which includes $10,000[.00] of consortium loss to Dotris Bordelon[.]" In its oral reasons for judgment, the trial court stated that the "total specials in this case were $75,363.04 . . . I will note at this time rewarding [sic] those special damages to Mr. Bordelon, limited of course to the law in this case, which will limit any recovery to the $50,000.00."

to be heard on October 19, 2009,[3] and also perfected an appeal on September 24, 2009. On October 19, 2009, following a hearing, the trial court executed a judgment which allocated fault equally between Mr. Desselle and Mr. Vercher and also reduced the amount assessed against Mr. Desselle to $25,000.00.

The Defendants (Mr. Desselle and Allstate) appeal, asserting that the trial court erred in allocating Mr. Desselle with fifty percent of the fault in the accident which caused Mr. Bordelon's injuries. The Defendants also contend that if the trial court was without authority to render the October 19, 2009 judgment, this court should reduce the award in the August 28, 2009 judgment to reflect the parties' stipulations.

## DISCUSSION

The Defendants assert that "any judgment in favor of [P]laintiff[s] against [Mr.] Desselle and Allstate should be reversed, inasmuch as . . . not only did two (2) separate and distinct accidents occur, separated by time and distance, but [D]efendant[s] simply owed no duty at all to [Mr.] Bordelon for the injuries inflicted upon him by [Mr.] Vercher." For the reasons that follow, we find that the trial court's assessment of fifty percent fault against Mr. Desselle to be manifestly erroneous,[4] and we reverse the original judgment dated August 28, 2009. Additionally, we vacate the second judgment of the trial court dated October 19, 2009.

*Fault*

Negligence actions arise under La.Civ.Code art. 2315(A), which provides that

---

[3] The court minutes indicate that the Motion to Vacate Judgment was originally set for September 25, 2009. On September 24, 2009, the Defendants filed a Motion to Continue, and the matter was rescheduled for October 19, 2009. The record does not contain the Motion to Vacate Judgment or the date on which it was filed.

[4] "An appellate court is to apply the manifest error standard of review to a factfinder's allocation of fault." *Lavalais v. State, Dep't of Transp. and Dev.*, 09-662, p. 2 (La.App. 3 Cir. 12/9/09), 26 So.3d 895, 898 (citing *Cheairs v. State, Dep't of Transp. and Dev.*, 03-680 (La. 12/3/03), 861 So.2d 536).

4

"[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The analysis employed in determining liability under La.Civ.Code art. 2315 is known as the duty/risk analysis. *Rando v. Anco Insulations, Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065. The duty/risk analysis consists of the following four-prong inquiry:

> (1) Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e., was it a cause-in-fact of the harm which occurred? (2) Did the defendant(s) owe a duty to the plaintiff? (3) Was the duty breached? (4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

*Id.* at 1086 (citing *Mathieu v. Imperial Toy Corp.*, 94-952 (La. 11/30/94), 646 So.2d 318). In an action for damages where a person suffers injury or loss, the trier of fact shall determine the percentage of fault of all persons found to have contributed or caused that injury or loss. La.Civ.Code art. 2323.

In the instant matter, nothing in the record controverts the undisputed fact that there were two separate and distinct accidents. The first accident was a two-vehicle accident involving vehicles being operated by Mr. Desselle and Mr. Vercher. The second accident was a vehicle/pedestrian accident occurring when the vehicle being operated by Mr. Vercher struck and seriously injured the pedestrian, Mr. Bordelon. Application of the duty/risk analysis to the second accident which resulted in Mr. Bordelon's injuries yields the conclusion that Mr. Desselle is not liable for the injuries sustained by Mr. Bordelon.

Considering the first inquiry of the duty/risk analysis, the evidence establishes that the sole proximate and legal cause of the second accident was the operation of the Vercher vehicle by Mr. Vercher when he inexplicably struck Mr. Bordelon with his vehicle. Even assuming that Mr. Vercher was attempting to move his vehicle at

5

the instruction of Mr. Desselle, which is disputed, this request of Mr. Desselle was not the legal cause of the second accident. The legal cause of the second accident was Mr. Vercher operating his vehicle and striking Mr. Bordelon; or, at the very least, Mr. Vercher's actions constituted a superceding and intervening cause of Mr. Bordelon being struck by the Vercher vehicle. Additionally, even if a duty could be established on the part of Mr. Desselle, Mr. Bordelon being struck by the Vercher vehicle is simply not within the scope of the protection of any such duty owed by Mr. Desselle under the factual scenario of this case.

The evidence is unequivocal that following the first accident, the Vercher vehicle came to a complete stop and remained stopped for a period of time before Mr. Vercher inexplicably accelerated, proceeded forward, and struck Mr. Bordelon who was standing in his yard. The estimation of the time that elapsed between these two accidents, understandably, varies between the witnesses. However, the evidence is wholly consistent that sufficient time elapsed for several actions to transpire in the interim.

Mr. Desselle testified that after the impact between he and the Vercher vehicle, he approached the Vercher vehicle to ascertain if the occupants were injured. He first approached Mr. Vercher who indicated that he was not injured. Mr. Desselle then walked in front of and around the Vercher vehicle to the passenger's side of the vehicle, opened the door, and asked Mrs. Vercher if she was injured. His estimation of time was that it took "about a minute" for him "to see about the well[-]being of the Verchers." After receiving verbal confirmation that they were uninjured, Mr. Desselle stated that he went onto the highway to direct traffic since the vehicles were partially blocking the roadway. He testified that he was "directing traffic before [he]

6

heard [the Vercher vehicle's] engine rev." Mr. Desselle also testified that an additional two or three minutes may have passed from the time he left the Verchers to direct traffic and the time he heard the Vercher vehicle "rev up."

Mrs. Vercher, who testified via deposition, also recalled that the Vercher vehicle had come to a stop after the initial impact. Mrs. Vercher estimated that their vehicle had been stopped for "[j]ust a few seconds" before Mr. Vercher "applied his brakes and accelerator and went forward and hit Mr. Bordelon." However, she confirmed that during that period of time, Mr. Desselle approached their vehicle, asked Mr. Vercher if he was okay, walked around the front of and around their vehicle, opened the passenger side door, and asked if she was okay as well. Only after having done so did Mr. Desselle leave to direct traffic, all of which occurred before the second accident.

The testimony of Mr. and Mrs. Bordelon is also consistent with the other witnesses on the series of events. The Bordelons were outside their home when they heard the first accident. These witnesses unanimously agreed that the Vercher vehicle came to a stop following the first accident.

According to Mr. Bordelon, when he saw the vehicles, he ran "[t]o see if anybody was hurt." He testified that "Mr. Desselle had done [sic] got out of his truck and made the [sic] around to the Vercher[] car[.]" Mr. Bordelon heard Mr. Desselle say that he "was going to direct traffic." Mr. Bordelon explained that he went to "the driver's door[,]" and Mr. Vercher told him that "he wasn't hurt." At this time, Mrs. Vercher's door "was already opened[,]" and Mr. Desselle "was going to direct traffic." Mr. Bordelon then turned his back to the Vercher vehicle and began walking toward his home to ask Mrs. Bordelon to call the police. He was "[t]hirty or forty

7

feet" away from the Vercher vehicle when he "thought [he] heard the [Vercher vehicle's] engine crank." When Mr. Bordelon turned around, he yelled ["No!"] and waived his hands as the vehicle was coming toward him.[5]

Mrs. Bordelon also testified that she observed Mr. Desselle approach the Vercher vehicle and then go to direct traffic. Thereafter, she saw Mr. Bordelon walk to the Vercher vehicle to see if they were hurt. She testified that Mr. Bordelon was with the Verchers "[j]ust a few seconds" before he walked around the vehicle to their driveway and into their yard. Mrs. Bordelon explained that Mr. Bordelon walked to "about the middle of the front yard and all of a sudden he turn[ed] around[,] and he says ["No!"] although she did not "know [what] he was responding to[.]" In her words, "the car took off like crazy." "It just revved up real loud[,] and it kept coming after him[] in the yard." Mrs. Bordelon agreed that this occurred in two to three minutes.

In imputing liability to Mr. Desselle, the trial court found that Mr. Desselle was negligent in telling Mr. Vercher to move his vehicle. The trial court noted that Mr. Desselle's testimony indicated that he knew Mr. Vercher was in shock immediately following the first accident and stated:

> It's the Court's opinion that Mr. Vercher was in the state of mind and would have proceeded or followed instructions by anyone at that point[,] and it would have been negligent activity to go to him and do anything other than ask or [sic] for or try to retrieve the keys or certainly instruct Mr. Vercher to remain put. . . . Regarding the damages to Mr. Bordelon, the Court again has noted the duty[/]risk analysis as well, the gravity if something does happen. There was a duty owed to innocent people in

---

[5]According to Mr. Bordelon's testimony on direct examination, he yelled ["No!"] when he "heard somebody [that sounded] like Mr. Desselle say [to] move the vehicles" because he did not believe that the vehicles should have been moved before the police arrived. Mr. Desselle denies that he instructed Mr. Vercher to move his vehicle. Finding this relevant, the Defendants note that Mr. Bordelon did not mention that Mr. Desselle had so instructed Mr. Vercher in his original recorded statement nor on subsequent occasions during his testimony. Additionally, Mr. Vercher did not testify, and there was no corroboration that Mr. Desselle instructed Mr. Vercher to move his vehicle.

the area, the sudden emergency[,] if so, would be the one that Mr. Desselle is making[,] and Mr. Vercher appeared to be what was [sic] in shock[,] and the Court will assess or fault Mr. Desselle fifty percent to Mr. Desselle, fifty percent to Mr. Vercher regarding injuries sustained by Mr. Bordelon.

However, we find this conclusion to be manifestly erroneous. As stated above, even assuming that Mr. Desselle told Mr. Vercher to move his vehicle,[6] Mr. Desselle was not the legal cause of the second accident. Undisputedly, the second accident did not occur until after the first accident was over, and the vehicles had come to a stop. Additionally, after a certain period of time had passed, Mr. Vercher inexplicably and suddenly accelerated and struck Mr. Bordelon who had traversed thirty to forty feet into his yard. Mr. Desselle, who was in the roadway directing traffic, and who was unaware of what had transpired, was not the legal cause the second accident. Rather, Mr. Bordelon's injuries resulted only from the actions of Mr. Vercher. Thus, the sole proximate and legal cause of the second accident was the negligence of Mr. Vercher. For the foregoing reasons, we find Mr. Desselle to be free of any degree of negligence or fault relative to the second accident involving Mr. Vercher and Mr. Bordelon. Thus, we reverse the August 28, 2009 judgment of the trial court in favor of Mr. and Mrs. Bordelon and against Mr. Desselle and Allstate.

### The October 19, 2009 Judgment (Second Judgment)

The record indicates that the trial court signed a second judgment on October 19, 2009, after the order of suspensive appeal was entered and the appeal bond filed on September 24, 2009. The Defendants contend that the trial court was without authority to render the October 19, 2009 judgment. We agree.

---

[6]We note that the only source of this testimony was Mr. Bordelon who did not consistently relay this factual detail. Mr. Vercher did not testify at trial. When Mr. Bordelon testified as such, his testimony was self-serving, and, moreover, it was not corroborated by any other evidence.

9

Louisiana Code of Civil Procedure Article 2088(A) provides in pertinent part:

> The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. . . .

Further, La.Code. Civ.P. art. 1951 permits the amending of a final judgment of the trial court only to alter the phraseology or correct errors of calculation, not the substance of the judgment. "Courts have uniformly held substantive amendments to judgments made without recourse to the proper procedures, i.e., by way of a timely motion for a new trial or by appeal, to be absolute nullities." *Bourgeois v. Kost*, 02-2785, pp. 7-8 (La. 5/20/03), 846 So.2d 692, 696 (citing *LaBove v. Theriot*, 597 So.2d 1007 (La.1992)).

A review of the subsequently rendered October 19, 2009 judgment, in comparison with the August 28, 2009 judgment, reveals a reduced amount awarded to the Plaintiffs in the latter. Therefore, the change was substantive in nature. *See Bourgeois*, 846 So.2d at 695 (citing *Villaume v. Villaume*, 363 So.2d 448 (La.1978)) (wherein the court stated that an amendment is not substantive if it "takes nothing from or adds nothing to the original judgment.") Unquestionably, the October 2009 judgment was not an amendment to the August 2009 judgment since it took something from the prior judgment, i.e., it reduced the amount awarded. Further, the revision sought was not pursued through a motion for a new trial or appeal. Accordingly, the trial court lacked subject matter jurisdiction to issue the October 19, 2009 judgment, which is absolutely null and is hereby vacated. *Id.*

**DECREE**

For the foregoing reasons, the judgment of August 29, 2009 in favor of Lloyd and Dotris Bordelon and against Howard J. Desselle, Jr. and Allstate Insurance Company is reversed. Additionally, the judgment of October 19, 2009 is vacated. Costs of this proceeding are assessed against the Plaintiffs, Lloyd and Dotris Bordelon.

**ORIGINAL JUDGMENT REVERSED.**
**SECOND JUDGMENT VACATED.**

NUMBER 10-84

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

LLOYD BORDELON AND DOTRIS BORDELON

VERSUS

HOWARD J. DESSELLE, JR., JOHN E. VERCHER, ALLSTATE INSURANCE COMPANY AND STATE FARM INSURANCE COMPANY

AMY, J., concurs in part and dissents in part.

I concur in the majority's finding that the trial court was without authority to render the second judgment. Accordingly, I agree with the decision to vacate that judgment. However, I dissent in part, as I find that the original judgment should be reversed in part and affirmed in part as amended.

The trial court was presented with conflicting versions of the events which transpired after the accident between Mr. Desselle and Mr. Vercher. Its oral reasons for judgment indicate that after weighing the testimony, the trial court gave greater weight to the Bordelons' versions of events. It found that, based upon the testimony, Mr. Desselle instructed Mr. Vercher to move his vehicle. In light of the deference afforded to it, I find that the trial court was not manifestly erroneous in finding Mr. Desselle at fault. The trial court determined that the credible account of the events included Mr. Desselle telling Mr. Vercher to move his vehicle. The court noted that Mr. Desselle was aware that Mr. Vercher was in shock following the collision and thus, it was negligent for him to instruct Mr. Vercher to move his vehicle. As the record supports this factual determination, I would affirm the trial court's determination with regard to fault.

In sum, while I would affirm the original judgment, I would amend it to include reference to the parties' stipulation that the cause of action would not exceed

$50,000.00 and the trial court's finding of Mr. Desselle fifty percent at fault.